

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: <br> BARBARA E. STONE, <br>             Debtor. | BAP No. SC-26-1009-LBS <br><br> Bk. No. 94-09384-JBM7 |
| BARBARA E. STONE, <br>             Appellant, <br> v. <br> U.S. DEPARTMENT OF EDUCATION, <br>             Appellee. | **MEMORANDUM** |

Appeal from the United States Bankruptcy Court
for the Southern District of California
J. Barrett Marum, Bankruptcy Judge, Presiding

Before: LAFFERTY, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Barbara E. Stone ("Debtor") appeals the bankruptcy court's order denying her motion for contempt against the U.S. Department of Education (the "DOE") for violating the discharge injunction under § 524(a).[1]

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

1

Many years ago, Debtor received a chapter 7 discharge. Believing that certain student loans were discharged under the then-applicable Code, Debtor stopped making payments on her student loans. However, both the DOE and its predecessors continued to take action to collect on the debt post-discharge.

Debtor eventually filed a motion to hold the DOE in contempt. The bankruptcy court concluded that the subject loans would have been discharged under the applicable statutes at the time of Debtor's bankruptcy filing, but nevertheless held that Debtor's failure to bring an adversary proceeding and obtain a judgment of discharge precluded Debtor's enforcement of the discharge injunction. The bankruptcy court further held that, even if the DOE violated the discharge injunction, it acted with a "fair ground of doubt" as to the applicability of the discharge injunction, and thus should not be held in contempt.

We AFFIRM the bankruptcy court's holding that the DOE should not be held in contempt, but we REVERSE the portion of the court's order concluding that Debtor was required to obtain a judgment of dischargeability to benefit from the discharge injunction.

# FACTS[2]

## A.    Debtor's Bankruptcy Filing and Discharge

In 1994, Debtor filed a chapter 7 petition. Debtor sent notice of her filing to the then-current holders and servicers of her student loan debt. At the time of Debtor's filing, § 523(a)(8) of the Code excepted from the discharge certain student loans, but explicitly discharged any such loans that "first became due more than 7 years . . . before the date of the filing of the petition." § 523(a)(8)(A) (1994), *amended by* § 523(a)(8) (Supp. V 2005). During the pendency of Debtor's case, neither Debtor nor any of her student loan creditors filed an action regarding the applicability of § 523(a)(8) to Debtor's student loans.

In December 1994, Debtor received a chapter 7 discharge. Relying on her assumption that the debts were discharged, Debtor did not thereafter make any voluntary payments in satisfaction of her student loans.

## B.    The Current Dispute

In 2013, the DOE accepted assignment of all of Debtor's student loans. In September 2025,[3] after years of collection activity on the student

---

[2] We have taken judicial notice of the bankruptcy court docket and various documents filed through the electronic docketing system. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9th Cir. 1989); *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Debtor originally moved to reopen her bankruptcy case in 2002, noting that collection efforts on her student loans had continued post-discharge despite her belief that such debts had been discharged. The bankruptcy court reopened her case, but Debtor did not file a motion for contempt until approximately 23 years later.

We take no position on whether this delay had any legal impact on Debtor's

loans by the DOE and its predecessors, Debtor filed a motion for civil contempt against the DOE based on her contention that the DOE's continued efforts to collect on the loans violated the discharge injunction (the "Motion for Contempt").

In the Motion for Contempt, Debtor asserted that the version of § 523(a)(8) in effect in 1994 did not except her student loans from the discharge injunction. Accordingly, Debtor contended that any collection activity after her 1994 discharge was a violation of the injunction and requested that the court enter an order to, among other things, require the DOE to cease further collection, notify credit agencies, and reimburse Debtor for any post-discharge collection on the debt.

With respect to this latter request, Debtor identified several post-discharge offsets against her tax refunds. As the exhibits attached to the Motion for Contempt show, all but one of these offsets occurred prior to the assignment of the debt to the DOE; the only post-assignment offset occurred in 2019, when the DOE received $877 that would have been remitted to Debtor as a tax refund.

---

claims because that determination is irrelevant for purposes of this appeal. Nevertheless, we note that Debtor provided evidence that she attempted to retrieve her school transcripts – a document both parties appear to agree would provide the evidentiary basis to make a determination under § 523(a)(8) – but was at least initially unable to do so because the Registrar's Office withheld her transcripts based on the status of her student loans as delinquent.

In its response to the Motion for Contempt, the DOE did not dispute Debtor's contention that her student loan debts were discharged. Instead, the DOE mostly argued that it should not be held in contempt because it had a "fair ground of doubt" regarding the dischargeability of Debtor's student loans. *See Taggart v. Lorenzen*, 587 U.S. 554 (2019). In addition, the DOE stated that it was "prepared to waive its due process rights ordinarily associated with an adversary proceeding."

The DOE also voluntarily agreed to reduce Debtor's loan balance to $0.00, clear any associated credit reporting, and refund Debtor $877, i.e., the post-assignment amount received by the DOE.

After a hearing, the bankruptcy court denied the Motion for Contempt. In its written decision, the court held that Debtor was required to bring an adversary proceeding and obtain a judgment of dischargeability under § 523(a)(8) before enforcing the discharge injunction. As a result, the court concluded the DOE did not violate the discharge injunction.

Alternatively, the court concluded that, even if the DOE violated the discharge injunction, it acted with a "fair ground of doubt" regarding whether Debtor had the burden to obtain a judgment of dischargeability before the student loans were discharged. Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I). We have jurisdiction under 28 U.S.C. § 158.

5

## ISSUES

1. Did the bankruptcy court err in concluding that Debtor's student loans were not discharged?

2. Did the bankruptcy court err in denying Debtor's request for contempt sanctions?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision regarding dischargeability of a debt. *See Scheer v. State Bar (In re Scheer)*, 819 F.3d 1206, 1209 (9th Cir. 2016). We also review de novo a bankruptcy court's conclusions of law. *Sphere Acquisition, LLC v. Bella Hosp. Grp., LLC (In re Bella Hosp. Grp., LLC)*, 649 B.R. 200, 203 (9th Cir. BAP 2023).

The bankruptcy court's decision regarding civil contempt sanctions for a violation of the discharge injunction is reviewed for an abuse of discretion. *Nash v. Clark Cnty. Dist. Atty's Off. (In re Nash)*, 464 B.R. 874, 878 (9th Cir. BAP 2012). Under the abuse of discretion standard, the first step is to determine de novo whether the court applied the correct legal rule. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If the court applied the correct legal rule, the second step is to determine whether the court's application of the law to the facts was "illogical, implausible, or without support in inferences that may be drawn from the record." *Id.* at 1262.

**DISCUSSION**

The bankruptcy court's order denying the Motion for Contempt can be distilled to two main conclusions: first, that Debtor was required to obtain a judgment of dischargeability to enforce the discharge injunction with respect to her student loans and, second, that the DOE's actions did not rise to the level of contempt. As we discuss in section B, we take no issue with the bankruptcy court's holding with respect to contempt.

But, as we discuss in section A, we disagree with the court's conclusion that Debtor's student loans were not discharged unless and until she obtained a judgment declaring such debts discharged. In connection with this point, the bankruptcy court attempted to distinguish this case from our decision in *Irigoyen v. 1600 W. Invs., LLC (In re Irigoyen)*, 659 B.R. 1 (9th Cir. BAP 2024), and to otherwise generally cabin the applicability of *Irigoyen*.

For the reasons discussed below, we are not persuaded. We are bound by our prior published decisions, and the analysis set forth in *Irigoyen* neatly applies to the facts of this case. *See Black v. Leavitt (In re Black)*, 609 B.R. 518, 527 n.6 (9th Cir. BAP 2019).

**A. The bankruptcy court erred in holding that Debtor was required to obtain a judgment of dischargeability under § 523(a)(8).**

The bankruptcy court held that Debtor was required to obtain a judgment of dischargeability to invoke the protections of the discharge

7

injunction, largely resting this conclusion on *Hoxie v. Educational Credit Management Corp. (In re Hoxie)*, 370 B.R. 288 (S.D. Cal. 2006).

In *Hoxie*, a chapter 7 debtor filed a motion for contempt against a lender that attempted to collect on the debtor's student loans after the debtor received a discharge. *Id.* at 289-90. Similar to the facts herein, the debtor in *Hoxie* argued that the version of § 523(a)(8) in effect at the time of his bankruptcy filing discharged student loans that arose over five years before the petition date. Relying primarily on the Supreme Court's decision in *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004), the District Court affirmed the bankruptcy court's conclusion that the debtor was required to file an adversary proceeding to discharge the debt. *Id.* at 292-93.

But our recent decision in *Irigoyen*, including our interpretation of *Hood*, squarely conflicts with *Hoxie*. *In re Irigoyen*, 659 B.R. 1. In *Irigoyen*, the appellees continued to attempt collection on the debtor's student loans despite the debtor's receipt of a chapter 7 discharge. *Id.* at 5. The debtor filed a complaint against the appellees before the bankruptcy court, asserting that the subject debt was discharged and did not qualify as the type of loan excepted from the discharge under § 523(a)(8). *Id.* The bankruptcy court agreed with the debtor that the subject debt had been discharged, but concluded, relying on cases like *Hood*, that § 523(a)(8) required the debtor to obtain a judgment of dischargeability before enforcing the discharge injunction. *Id.* at 5-6.

We disagreed. First, in addressing the applicability of *Hood*, we discussed its limited holding; specifically, we stated that the Court in *Hood* "did not hold that every debt with a loose connection to § 523(a)(8) should be considered nondischargeable until proven otherwise." *Id.* at 9. "Rather, the Court merely stated that debts that qualified as educational loans under § 523(a)(8) were nondischargeable unless or until the debtor made the requisite 'undue hardship' showing." *Id*.

In distinguishing "undue hardship" cases from other disputes involving § 523(a)(8), we explained that "undue hardship" cases "are circumstantial, and circumstances change; a debtor may reopen her case and seek an 'undue hardship' determination based on changed circumstances at any time." *Id.* at 13. "The nature of the student loan and whether it qualifies as an excepted loan, on the other hand, is static – either the loan satisfies the statutory criteria set forth in § 523(a)(8) or it does not. As such, it is either excepted from the general discharge order or it is not." *Id.* at 14; *see also In re Haroon*, 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order.").

Second, in discussing the definition of "self-executing," we concluded that a "prudent interpretation" of the term was "that neither party is required to file a lawsuit to determine the dischargeability of the debt." *Id.* at 12. Importantly, however, "the lack of a determination does not change the nature of the debt." *Id.*

We supported our conclusion in *Irigoyen* in several ways: (i) the plain statutory language of §§ 523 and 727, which together require a court to grant a discharge of **all** debts except the "detailed and specific" exceptions set forth in § 523(a); (ii) the Supreme Court's mandate to construe those exceptions narrowly, *Kawaauhau v. Geiger*, 523 U.S. 57, 58 (1998); (iii) a Congressional report stating that courts are required "to grant the debtor a discharge of all his debts except for **very specific** and serious infractions on his part," S. REP. No. 95-989, at 7 (1978) (emphasis in *Irigoyen*); and (iv) the unjust outcome of a contrary interpretation, which "would lead to the absurd result that certain lenders would be barred from collecting payments while the automatic stay is in effect, and barred from collecting payments after the court deems the debt dischargeable, but enjoy a gap period between the lifting of the automatic stay and entry of the judgment of dischargeability to collect on the debt as they please without any obligation to reimburse the debtor or face contempt sanctions." *Id.* at 12-13.

Here, the bankruptcy court distinguished *Irigoyen* by limiting its reach to cases involving loans that do not qualify as educational loans under the current version of § 523(a)(8). While our discussion in *Irigoyen* was necessarily guided by the facts of that case, and thus focused on such non-qualified loans, the analysis in *Irigoyen* highlighted above easily extends to the matter before us.

Like the language regarding qualified loans at issue in *Irigoyen*, the seven-year limitations period in the 1994 version[4] of § 523(a)(8) is a static determination; the subject debt either arose before the limitations period or it did not. In other words, the debt "either . . . satisfies the statutory criteria set forth in § 523(a)(8) or it does not." *Id.* at 14. Thus, based on our interpretation of the term "self-executing" set forth in *Irigoyen*, Debtor's student loans were either discharged in 1994, or they were not.

Contrary to this principle, the bankruptcy court held both that: (i) the 1994 language of § 523(a)(8)(A), which discharged all debts outside the seven-year limitations period, applies to Debtor's student loans; and (ii) the debt was nevertheless excepted from the discharge. But pursuant to *Irigoyen*, and all the reasons supporting our interpretation of the term "self-executing" therein, if the first prong of the court's holding is true, then the second cannot stand.

As we explained in *Irigoyen*, Congress mandated that the discharge injunction cover **all** prepetition debts except for the highly specific exceptions set forth in § 523(a)(8), which exceptions must be "narrowly construed." *Id.* at 12 (citing *Kawaauhau*, 523 U.S. at 58). When Congress

---

[4] The parties do not dispute that the version of § 523(a)(8) in effect in 1994 applies to the question of dischargeability of Debtor's student loan debts. That version read, in relevant part, that a discharge does not discharge debts for certain educational loans "unless . . . such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition." § 523(a)(8)(A) (1994), *amended by* § 523(a)(8) (Supp. V 2005).

enacted the statute in effect in 1994, it explicitly delineated a limitations period of seven years. Thus, any debts outside that limitations period were discharged. *In re Haroon*, 313 B.R. at 689 ("The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order.").

We acknowledge that the nature of a debt and whether it is covered by one of the "self-executing" subsections of § 523(a) is not always clear and may necessitate adjudication by a court. For this reason, courts have occasionally attempted to impose a burden on one party or another to initiate litigation to resolve the question of dischargeability. *See, e.g., In re Hoxie*, 370 B.R. 288. But with the exception of § 523(a)(2), (a)(4), and (a)(6) – i.e., the subsections that are **not** "self-executing" – the Code does not expressly saddle a specific party with the burden to file a complaint. *See* § 523(c).

We see no reason to impose a burden where Congress did not. To give effect to Congress's intent that certain subsections of § 523(a)(8) be "self-executing," neither party is required to bear the expense of litigation where the nature of a debt as dischargeable or nondischargeable is clear. Rather, they each bear the risk of not doing so. If there is a dispute, either party may choose to initiate a lawsuit to protect and clarify their rights. As we explained in *Irigoyen*, this interpretation does not prejudice creditors:

> If a debt is clearly within the § 523(a)(8) exception, lenders need not ever initiate a lawsuit; if there is a "fair ground of doubt"

> about whether the debt is excepted, lenders are protected from contempt sanctions by *Taggart*; and, in cases where the debt clearly falls outside § 523(a)(8), lenders are appropriately subject to sanctions because Congress never intended to except those debts in the first place. In any event, a lender who wants a firm resolution may file a lawsuit and obtain a judgment at any time.

*In re Irigoyen*, 659 B.R. at 13.

In sum, the basic point of *Irigoyen* was simply that debts that are not explicitly covered by one of the subsections of § 523(a) do not benefit from a presumption of nondischargeability. Otherwise, debtors would be deprived of the full force and protection Congress intended the discharge injunction to provide.

Consequently, because the 1994 version of § 523(a)(8)(A) applied to the subject student loans, the loans were discharged, and any action to collect on the loans violated the discharge injunction of § 524(a).[5]

---

[5] On appeal, the DOE contends that the bankruptcy court did not really determine the dischargeability of the student loans, and that the DOE has not waived its right to an adversary proceeding. *See* Rule 7001(f). But the record before us belies this assertion. As we noted above, the bankruptcy court explicitly stated that "Debtor's student loans qualify under the seven-year rule in the 1994 amendment to § 523(a)(8) that governed." The only reason the bankruptcy court refrained from entering an order of dischargeability was because Debtor did not previously obtain a judgment. Given that we are reversing that portion of the bankruptcy court's order, there is nothing left to be done by the court to deem the student loans discharged.

Moreover, the DOE explicitly stated in its response to the Motion for Contempt that it was "prepared to waive its due process rights ordinarily associated with an adversary proceeding." Even if we generously decide to disregard this statement, the DOE did not dispute Debtor's argument that the debt was discharged; rather, the DOE simply argued that they had a "fair ground of doubt" to believe the discharge

**B.** **The bankruptcy court did not err in concluding that the DOE had a "fair ground of doubt."**

The Supreme Court's decision in *Taggart* sets forth the requirements to hold a creditor that violates the discharge injunction in contempt. As *Taggart* specifically says, civil contempt sanctions are appropriate "when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart*, 587 U.S. at 560. Thus, a party may be held in contempt only where there is no "fair ground of doubt as to the wrongfulness of" the party's conduct. *Id.* at 561.

The bankruptcy court's conclusion that the DOE acted with a "fair ground of doubt" was not "illogical, implausible, or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1262. The DOE asserted that it relied on *Hoxie* to conclude that Debtor was required to obtain a judgment of dischargeability to enforce the discharge injunction with respect to her student loans.

At the time the DOE received an offset from Debtor's tax refund, in 2019, *Irigoyen* had not been published and certain authorities, including *Hoxie*, imposed a burden on the debtor to obtain a judgment of dischargeability before enforcing the discharge injunction with respect to student loans. *See, e.g., In re Hoxie*, 370 B.R. 288. In fact, we noted in *Irigoyen* that courts have historically "employed broad, all-encompassing language

---

injunction did not apply. The DOE cannot now, for the first time on appeal, dispute the dischargeability of the subject student loans.

14

regarding the 'self-executing' nature of § 523(a)(8)." *In re Irigoyen*, 659 B.R. at 13 (citing *Easterling v. Collecto, Inc.*, 692 F.3d 229, 231 (2d Cir. 2012) ("Student loans are presumptively nondischargeable in bankruptcy.")).

In light of the above, there was an "objectively reasonable basis for concluding that the [DOE's] conduct might be lawful under the discharge order." *Taggart*, 587 U.S. at 560. Consequently, the bankruptcy court's determination that the DOE should not be held in contempt was not an abuse of discretion.

Of course, the fact that a party is not held in contempt does not mean that the court is unable to order a party to take action to remedy a violation of the discharge injunction. Even if the DOE had a "fair ground of doubt," the court could have ordered the DOE to undo its actions in violation of the discharge injunction as part of its power to enforce statutory provisions of the Code, such as § 524(a). *See* § 105(a).

Because the bankruptcy court held that the DOE did not violate the discharge injunction, it did not engage in an analysis of steps required to remedy the violation of the discharge. Nevertheless, the failure to do so appears to have been harmless error. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 355 (9th Cir. BAP 2012) ("Generally speaking, we ignore harmless error."), *aff'd*, 604 F. App'x 552 (9th Cir. 2015).

The record before us reflects that the DOE voluntarily remitted to Debtor the only amounts it collected after assignment of the debt to the

DOE. The record also reflects that the DOE reduced Debtor's loan balance to $0.00 and reported the discharge of the debt to credit agencies.

Debtor argues on appeal that the DOE also should have refunded to Debtor approximately $14,000 in tax offsets that occurred prior to the subject debt being assigned to the DOE. But Debtor did not develop, either before the bankruptcy court or this Panel, any legal theory under which the DOE could be held liable, as an assignee, for its assignor's pre-assignment violations of the discharge injunction. In addition, there is nothing in the record evidencing the nature of the assignment of the debt to the DOE, and we are thus unable to assess what benefits or liabilities the DOE acquired by way of the assignment.

In any event, nothing in our decision precludes Debtor from pursuing additional damages against previous holders of the subject loans, or from presenting a cohesive legal theory establishing that the DOE may be held liable for its assignors' violations of the discharge injunction. These issues may be brought to the bankruptcy court to adjudicate them in the first instance.

## CONCLUSION

For the reasons set forth above, we REVERSE the portion of the bankruptcy court's holding that the subject debt was not discharged and AFFIRM the portion of the bankruptcy court's order concluding that the DOE should not be held in contempt.

16